UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER DAVON SCOTT,

Plaintiff,

v.

AMES, et al.,

Defendants.

Case No. 24-cv-07273-RS (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff alleges in this 42 U.S.C. § 1983 action that Contra Costa Sheriff's Deputies Ruiz and Ames used excessive force on him, thereby violating his Eighth Amendment rights. Defendants move for summary judgment on grounds plaintiff did not exhaust his administrative remedies regarding his claims. Plaintiff has filed an opposition and defendants have filed a reply.

Defendants' summary judgment motion is GRANTED. Defendants have presented undisputed evidence that plaintiff failed to exhaust his administrative remedies. Plaintiff does not address exhaustion in his opposition to the summary judgment motion and his conclusory allegations in his complaint that the jail refused to respond to his grievances is insufficient to create a genuine dispute of material fact.

**BACKGROUND**

I.      **Excessive Force Allegations**

Plaintiff alleges that on December 13, 2023 at the West County Detention Facility in Contra Costa County, Deputies Ames and Ruiz "assaulted [him] by jumping on [him] [and] grabbing" him, causing damage to his "left shoulder and both knees as well as [to] my mental state." (First Am. Compl., Dkt. No. 7 at 2-3.) He alleges defendants "continued to apply more pressure" and caused him more pain. (*Id.* at 3.) Plaintiff alleges that on August 25, 2024, Defendant Ames "admitted that he recalled beating up Plaintiff

United States District Court
Northern District of California

with Deputy Ruiz." (*Id.*) Plaintiff alleges he still suffers from a dislocated shoulder as a result of the incident. (*Id.*)

Defendants offer a different version of events. Plaintiff was housed in the upper tier of Building 5B at the facility, where Ames was assigned. (MSJ, Ames Decl., Dkt. No. 30-5 ¶¶ 2-3.) On December 8, 2023, Ames told some inmates on the upper tier to return to their cells.[1] Plaintiff said Ames could not tell him what to do because he was "older." (*Id.* ¶ 3.) Ames, who wanted to avoid escalation, left and walked down to the lower tier. (*Id.*) Plaintiff briefly followed him before turning around and standing near the railing on the upper tier. (*Id.*)

Ames then loudly ordered the inmates in the common areas to return to their cells. (*Id.* ¶ 4.) Rather than comply, plaintiff walked down the stairs and said in a loud and aggressive voice, "Don't play with me, man." (*Id.* ¶ 5; Ruiz Decl., Dkt. No. 30-3 ¶ 4.) Fearing an attack, Ames took a step back to create distance and called for a "Code 2 assist" on his radio, thereby requesting help from other deputies. (Ames Decl., Dkt. No. 30-5 ¶ 5.)

During this time, Ruiz came to Building 5B and saw the interaction between plaintiff and Ames. (Ruiz Decl., Dkt. No. 30-3 ¶¶ 3-4.) Based on plaintiff's aggressive and threatening conduct and his failure to comply, Ruiz decided that plaintiff should be removed from the building and written up for violating regulations. (*Id.* ¶ 5.) He ordered plaintiff to get on the ground to be handcuffed, but, rather than comply, plaintiff walked up the stairs. (*Id.* ¶¶ 5-6.) Defendants followed and Ruiz repeated his order. (*Id.* ¶ 6.) Plaintiff turned around at the top of the stairs and said, "[M]atter of fact, what." (*Id.* ¶ 7.) Ruiz was concerned for the deputies' safety: they were at a physical disadvantage while standing near the top of the stairs and plaintiff had refused to comply with orders. (*Id.*)

---

[1] Plaintiff asserts that the incident occurred on December 13, 2023, but defendants assert it occurred on December 8, 2023.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE No. 24-cv-07273-RS

United States District Court
Northern District of California

Ruiz grabbed plaintiff's arms to place him on the ground and handcuff him, and to prevent him from striking the deputies. (*Id.*) He called for a "Code 3 assist" on his radio, which is a request for urgent assistance. (*Id.*) Plaintiff tensed up his arms and resisted Ruiz's attempts to control him as they moved toward plaintiff's cell. (*Id.* ¶ 8.) At the cell entrance, plaintiff grabbed the door frame to prevent defendants controlling his arms and handcuffing him. (*Id.*) Ruiz grabbed plaintiff's arm while Ames tried to control the other arm before wrapping his arms around plaintiff's torso. (*Id.* ¶ 9.) Defendants tried to place plaintiff on the ground, but he resisted by holding onto the door frame. (*Id.*) Other deputies arrived and assisted defendants in placing plaintiff on the ground. (*Id.*) Ruiz controlled plaintiff's right arm and Ames the left while they handcuffed him. (*Id.*) While he was on the ground, plaintiff told them he would "beat [their] ass." (*Id.* ¶ 10.) The deputies got plaintiff to his feet and he was escorted out of the building by deputies other than defendants. (*Id.*)

Ruiz alleges that he used no further force once plaintiff was standing. (*Id.* ¶ 11.) Ames briefly held plaintiff's arm as he was being escorted. (Ames Decl., Dkt. No. 30-5 ¶ 11.) Defendants aver that "at no point during the incident did Ruiz or Ames use force beyond control holds. They did not strike Scott with their hands, feet or other parts of their body. They did not use any weapons against Scott during the incident." (MSJ, Dkt. No. 30 at 8-9.)

Plaintiff was offered a medical evaluation, but refused any care. (*Id.* at 9.) Defendants assert that medical records show that plaintiff did not dislocate his shoulder until months later. (*Id.*)

## II. Exhaustion of Administrative Remedies

Defendants allege plaintiff failed to exhaust his administrative remedies regarding his claims against defendants.[2] In support of this, defendants have submitted evidence by

---

[2] Defendants' other grounds for summary judgment do not need to be considered at this

way of a declaration from Rachael Villane, a Clerical Supervisor with the Contra Costa Sheriff's Office. (MSJ, Villane Decl., Dkt. No. 30-9.) According to Villane, she reviewed plaintiff's booking file, which starts with his December 6, 2023 arrest and continues until he was released to another law enforcement agency around February 14, 2024. (*Id.* ¶ 5.) She found "no grievances in Scott's booking file relating to an alleged use of force by deputies at the West County Detention Facility in December 2023." (*Id.* ¶ 4.)

The sheriff's office has a written policy and a procedure manual that "address the requirements for inmate to properly submit and appeal grievances," including those related to conditions of confinement, such as housing, visitation and the conduct of deputies. (*Id.* ¶ 5.) All inmates are made aware of the grievance procedure because they are required to watch a video during the booking process that provides an overview of the jail's policies and procedures, including the grievance policies and procedures. (*Id.* ¶ 12.) Also, inmates have access to computer tablets that contain copies of the grievance procedure. (*Id.* ¶ 14.) Any grievances filed by an inmate are placed in the inmate's booking folder. (*Id.* ¶ 15.)

Plaintiff does not address administrative exhaustion in his opposition. In his complaint, he states that he presented the facts through the grievance procedure and states without elaboration that the "jail agency refuse[d] to respond." (First Am. Compl., Dkt. No. 7 at 1-2.) He also alleges that he was "transferred to another county to answer for [*sic*] case," from which it can be inferred he alleges he was prevented from exhausting his administrative remedies at the jail because he was transferred to another institution. (*Id.* at 2.)

### STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those

---

time.

which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted).

## DISCUSSION

Prisoners must properly exhaust their administrative remedies before filing suit in federal court, as mandated by the Prison Litigation Reform Act (PLRA). *Ross v. Blake*, 578 U.S. 632, 635 (2016); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 24-cv-07273-RS

United States District Court
Northern District of California

administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A prisoner is required to exhaust the grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Blake*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 737 (2001)). Unless the administrative process is not available, "the PLRA's text suggests no limits on an inmate's obligation to exhaust — irrespective of any 'special circumstances.' " *Id.* at 639. "[T]hat mandatory language means a court may not excuse a failure to exhaust." *Id.*

The prison's requirements define the boundaries of proper exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules." *Ngo*, 548 U.S. at 90. The exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 84.

The grievance procedure at the Contra Costa County Jail requires first that inmates try to resolve the grievance informally with a housing deputy before filing a formal written grievance. (MSJ, Balea Decl., Dkt. No. 30-7 ¶ 6.) If that does not resolve the problem, a formal grievance may be filed. The grievance must be: made in writing; submitted within seven days of the incident; submitted on an Inmate Request Form; specific and pertain to a single subject matter; and placed in the secured grievance drop box located in every housing module. (*Id.* ¶ 7.) The grievance box is checked by staff three times a day; staff must act on the grievance within seven days of receipt; and an appeal of the staff decision on the grievance must be filed within three days after disposition. (*Id.* ¶¶ 8-10.)

Defendants have presented undisputed evidence that plaintiff did not exhaust his administrative remedies prior to filing suit. Plaintiff does not address exhaustion in his opposition to defendants' summary judgment motion, and therefore has not presented any evidence that he exhausted his claims. His conclusory assertions in his complaint that the jail refused to respond to his grievances is insufficient to create a genuine dispute of

United States District Court
Northern District of California

material fact. A prisoner must provide evidence, not just make conclusory allegations, to meet his burden to show that existing and generally available administrative remedies were effectively unavailable. *See Draper v. Rosario*, 836 F.3d 1072, 1079-80 (9th Cir. 2016). A prisoner's "unsupported allegations" regarding impediments to exhaustion are insufficient to create a triable issue of fact. *Id.* (plaintiff's statements that prison officials had "engaged in impeding and unethical conduct of obstructing" his inmate appeals "from being exhausted in a timely manner," and had "prohibited and impeded" his efforts to exhaust were insufficient to create a triable issue because the prisoner did not explain what kinds of impeding and unethical conduct occurred).

Furthermore, his allegation that his transfer to another jail prevented him from exhausting is not supported by the facts. The incident occurred (according to plaintiff) on December 13, 2023 and he remained at the jail until February 14, 2024. This provided more than enough time to attempt an informal resolution, file a written grievance within seven days of the incident, receive a response within seven days, and to file an appeal within three days after the staff response. Defendants' summary judgment motion is GRANTED.

### CONCLUSION

Defendants' motion for summary judgment is GRANTED. (Dkt. No. 30.) Plaintiff's motion for a pretrial conference or to have the action referred for settlement proceedings is DENIED. (Dkt. No. 36.) The Clerk shall terminate all pending motions, enter judgment in favor of defendants, and close the file.

**IT IS SO ORDERED.**

**Dated:** June 3 , 2026

_____
RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California